IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| BOBO'S DRUGS, INC. d/b/a DAVIS ISLANDS PHARMACY, individually and as the representatives of a class of similarly-situated persons, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) | CLASS ACTION |
| TOTAL PHARMACY SUPPLY, INC. and LEXMARK INTERNATIONAL, INC., | ) ) ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Bobo's Drugs, Inc. d/b/a Davis Islands Pharmacy ("Plaintiff") brings this action on behalf of itself and all other persons similarly situated and, except for those allegations pertaining to Plaintiff or its attorneys, which are based upon personal knowledge, alleges the following upon information and belief against defendants, Total Pharmacy Supply, Inc. ("Total Pharmacy") and Lexmark International, Inc. ("Lexmark"), (together, "Defendants"):

## PRELIMINARY STATEMENT

1.    Defendants have sent advertisements by facsimile in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and the regulations the Federal Communications Commission ("FCC") has prescribed thereunder, 47 C.F.R. § 64.1200 (collectively, the "TCPA").

2.    Defendants sent Plaintiff at least two advertisements by facsimile and in violation of the TCPA. Exhibit A, Exhibit B. Exhibit A and Exhibit B advertise

the quality or availability of genuine Lexmark reconditioned toner cartridges available for purchase through Total Pharmacy. Plaintiff did not expressly consent to receive any advertisement from Defendants by fax.

3.    Plaintiff brings this action against Defendants on behalf of a class of all persons or entities that Defendants sent one or more telephone facsimile messages ("faxes") about Lexmark reconditioned toner cartridges available from Total Pharmacy, seeking statutory damages for each violation of the TCPA, trebling of the statutory damages if the Court determines Defendants' violations were knowing or willful, injunctive relief, compensation and attorney fees (under the conversion count), and all other relief the Court deems appropriate under the circumstances.

4.    Defendants' unsolicited faxes damaged Plaintiff and the other class members. Unsolicited faxes tie up the telephone lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message. The recipient of a "junk" fax loses the use of its fax machine while receiving an unsolicited fax transmission, and many lose their paper and ink toner in printing the fax. Such an unsolicited fax interrupts the recipient's privacy. A junk fax wastes the recipient's valuable time that would have been spent on something else.

## PARTIES, JURISDICTION, AND VENUE

5.      Plaintiff, Bobo's Drugs, Inc. d/b/a Davis Islands Pharmacy, is an independent pharmacy located in Tampa, Florida.

6.      On information and belief, Total Pharmacy Supply, Inc. is a Texas Corporation with its principal place of business in Arlington, Texas.

7.      On information and belief, Lexmark International, Inc. is a Delaware corporation with its principal place of business in Miami, Florida.

8.      The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

9.      Personal jurisdiction exists over Defendants in Florida because Defendants have transacted business within the State and have committed tortious acts within the State.

10.     Venue is proper in the Middle District of Florida because Defendants committed statutory torts within this District and a significant portion of the events took place here.

## FACTS

11.     Total Pharmacy is a wholesale distributor of pharmacy supplies, including forms, prescription packaging, dispensing supplies, and durable medical equipment.

12.     Lexmark is a provider of printing and imaging products, including hardware, toner cartridges, and software products.

13.     On information and belief, Lexmark operates and maintains a

"partner" program under which it provides promotional tools, loyalty programs, and other resources for Lexmark authorized resellers to help boost revenue.

14.     On information and belief, Total Pharmacy is an authorized reseller of Lexmark reconditioned toner cartridges.

15.     On information and belief, Lexmark provided promotional materials for Lexmark reconditioned toner cartridges to Total Pharmacy for distribution.

16.     Defendants sent advertisements by facsimile to Plaintiff and a class of similarly-situated persons. Whether Defendants did so directly or with the assistance of a third party (yet unknown to Plaintiff), Defendants are directly liable for violating the TCPA.

17.     Plaintiff has received at least two of Defendants' advertisements by facsimile. A true and correct copy of the fax Plaintiff received on November 19, 2013 is attached as Exhibit A. A true and correct copy of the fax Plaintiff received on March 20, 2014 is attached as Exhibit B.

18.     Exhibit A and Exhibit B are each a one-page document Defendants sent by fax. The faxes advertise the commercial availability or quality of property, goods, or services. The faxes provide information about the availability and price of Lexmark reconditioned toner cartridges available for purchase through Total Pharmacy and methods for contacting Total Pharmacy to purchase the cartridges. Exhibit A, Exhibit B.

19.     Exhibit A and Exhibit B advertise the commercial availability of Lexmark reconditioned toner cartridges available for purchase through Total

4

Pharmacy by providing the price of each offered cartridge. Exhibit A, Exhibit B.

20.    Exhibit A and Exhibit B advertise the quality of Lexmark reconditioned toner cartridges available for purchase through Total Pharmacy by stating that cartridges come with a lifetime warranty, noting that the cartridges are "Genuine" Lexmark products, and representing that the cartridges yield more and fail less than generic cartridges. Exhibit A, Exhibit B.

21.    Exhibit A and Exhibit B contain a website address, toll-free telephone number, and a fax number in large, bold font which recipients could use to order Defendants' products. Exhibit A, Exhibit B.

22.    Exhibit A and Exhibit B prominently display Lexmark's logo in the top left corner. Exhibit A, Exhibit B.

23.    Exhibit A and Exhibit B state that Total Pharmacy is approved to provide genuine Lexmark-brand reconditioned toner cartridges. Exhibit A, Exhibit B.

24.    Exhibit A and Exhibit B do not include the opt-out notice required by the TCPA. *See* 47 U.S.C. § 227 (b) (2) (D) & (E) and 47 C.F.R. § 64.1200 (a) (4) (iii) & (v).

25.    On information and belief, Defendants sent advertisements by facsimile to Plaintiff and more than 39 other persons in violation of the TCPA.

26.    Plaintiff and the other class members owe no obligation to protect their fax machines from Defendants. Their fax machines are ready to send and receive their urgent communications, or private communications about patients' medical

needs, not to receive Defendants' unlawful advertisements.

## CLASS ACTION ALLEGATIONS

27.    Plaintiff brings this action as a class action on behalf of itself and all others similarly situated as members of a class, initially defined as follows:

> Each person or entity that was sent one or more telephone facsimile messages after October 30, 2013 offering Genuine Lexmark Reconditioned Toner Cartridges available through www.tps-online.com or 1-800-878-2822 that did not inform the fax recipient that he or she may make a request to the sender of the advertisement not to send any future facsimile advertisements and that failure to comply with the request within 30 days in unlawful.

Plaintiff anticipates modifying the proposed class definition, including proposing subclasses where appropriate, after discovery about the scope and breadth of Defendant's fax advertising program and will do so through an amended motion for class certification pursuant to Fed. R. Civ. P. 23.

28.    Excluded from the class are Defendants, any entity in which Defendants have a controlling interest, each of Defendants' officers, directors, legal representatives, heirs, successors, and assigns, and any Judge assigned to this action, including his or her immediate family.

29.    In this action, Plaintiff intends to discover, include, and resolve the merits of claims about all advertisements Defendant sent by fax. Exhibit C, a Demand for Preservation of All Tangible Documents Including Electronically Stored Information.

30.    This action is brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23. This action satisfies Rule 23 (a)'s numerosity, commonality, typicality, and adequacy requirements. Furthermore, the questions of

law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23 (b) (3).

31. **Numerosity/impracticality of joinder.** On information and belief, the class consists of more than 39 persons and, thus, is so numerous that individual joinder of each member is impracticable. The precise number of class members and their identities are unknown to Plaintiff, but will be obtained from Defendants' records or the records of third parties.

32. **Commonality and predominance.** There is a well-defined community of interest and there are common questions of law and fact that predominate over any questions affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

> a. Whether Exhibit A, Exhibit B, and other yet-to-be-discovered facsimiles sent by or on behalf of Defendants advertised the commercial availability or quality of any property, goods or services;
>
> b. Whether Defendants were the senders of advertisements by facsimile promoting the commercial availability or quality of any property, goods, or services;
>
> c. The manner and method used to compile or obtain the list(s) of fax

numbers to which Defendants sent fax advertisements;

 d. Whether the Court should award statutory damages to Plaintiff and the other class members;

 e. If the Court finds that Defendants willfully or knowingly violated the TCPA, whether the Court should exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than three times the amount;

 f. Whether the Court should enjoin Defendants from faxing advertisements in the future; and

 g. Whether Defendants' conduct as alleged herein constituted conversion.

33. **Typicality of claims.** Plaintiff's claims are typical of the claims of the other class members, because Plaintiff and all class members were injured by the same wrongful practices. Plaintiff and the members of the class received Defendants' advertisements by facsimile and those advertisements did not contain the opt-out notice required by the TCPA. Under the facts of this case, because the focus is upon Defendants' conduct, if Plaintiff prevails on its claims, then the other putative class members will prevail as well.

34. **Adequacy of representation.** Plaintiff is an adequate representative of the class because its interests do not conflict with the interests of the class it seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, and TCPA litigation in particular, and Plaintiff intends to

8

vigorously prosecute this action. Plaintiff and its counsel will fairly and adequately protect the interest of members of the class.

35.    **Prosecution of separate claims would yield inconsistent results.** Even though the questions of fact and law in this action are predominantly common to Plaintiff and the putative class members, separate adjudication of each class member's claims would yield inconsistent and varying adjudications. Such inconsistent rulings would create incompatible standards for Defendants to operate under if/when class members bring additional lawsuits concerning the same unsolicited fax advertisements or if Defendants choose to advertise by fax again in the future.

36.    **A class action is the superior method of adjudicating the common questions of law or fact that predominate over individual questions.** A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable. The likelihood of individual class members prosecuting separate claims is remote, and even if every class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the class would be proper. Plaintiff envisions no difficulty in the management of this action as a class action.

## COUNT I
## TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

37.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

38.    Plaintiff brings Count I on behalf of itself and a class of similarly situated persons against Defendants.

39.    The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine…." 47 U.S.C. § 227 (b) (1).

40.    The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227 (a) (4).

41.    Exhibit A advertises Defendants' commercially available toner cartridges. Exhibit A.

42.    Exhibit B advertises Defendants' commercially available toner cartridges. Exhibit B.

43.    Defendants sent Exhibit A and Exhibit B to Plaintiff and the fax machines of other health professionals to promote Defendants' toner cartridges.

44.    The TCPA provides a private right of action as follows:

   3.    Private right of action.  A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:

      (A)    An action based on a violation of this

10

subsection or the regulations prescribed under this subsection to enjoin such violation,

(B)    An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C)    Both such actions.

47 U.S.C. § 227 (b) (3).

45.    Sender is defined as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200 (f) (10).

46.    The Court, in its discretion, may treble the statutory damages if it determines that a violation was knowing or willful.  47 U.S.C. § 227 (b) (3).

47.    The TCPA requires that every advertisement sent by facsimile must include an opt-out notice clearly and conspicuously displayed on the bottom of its first page. 47 U.S.C. § 227 (b) (2) (D) and (E); 47 C.F.R. § 64.1200 (a) (4).

48.    Here, Defendants violated 47 U.S.C. § 227 (b) (1) (C) by sending advertisements by facsimile (such as <u>Exhibit A</u>) to Plaintiff and the other class members without their prior express invitation or permission.

49.    Here, Defendants violated 47 U.S.C. § 227 (b) (1) (C) by sending an advertisement by facsimile (such as <u>Exhibit A</u>) to Plaintiff and the other class members without their prior express invitation or permission.

50.    Here, Defendant violated 47 U.S.C. § 227 (b) (2) (D) and (E) and 47 C.F.R. § 64.1200 (a) (4) (iii) & (v) by failing to include a compliant opt-out notice.

<u>Exhibit A</u>, <u>Exhibit B</u>.

51.    Facsimile advertising imposes burdens on recipients that are distinct from the burdens imposed by other types of advertising. The required opt-out notice provides recipients the necessary information to opt-out of future fax transmissions, including a notice that the sender's failure to comply with the opt-out request will be unlawful. 47 C.F.R. § 64.1200 (a) (4) (iii).

52.    <u>Exhibit A</u> and <u>Exhibit B</u> do not state that Defendant's failure to comply with an opt-out request within 30 days is unlawful.

53.    <u>Exhibit A</u> and <u>Exhibit B</u> do not inform the recipient that he/she/it has a legal right to request that Defendant not send any future fax.

54.    <u>Exhibit A</u> and <u>Exhibit B</u> do not inform the recipient that an opt-out request will be valid only unless and until the person making the request subsequently provides express invitation or permission to the sender, in writing or otherwise, to send such advertisement to such person at such telephone facsimile machine.

55.    The TCPA is a strict liability statute and Defendants are liable to Plaintiff and the other class members even if Defendants' actions were negligent. 47 U.S.C. § 227 (b) (3).

56.    Even if Defendant did not intend to injure Plaintiff and the other class members, did not intend to violate their privacy, and did not intend to waste their valuable time with Defendant's advertisements, those facts are irrelevant because the TCPA is a strict liability statute.

57.     If Defendants' actions were knowing or willful, then the Court has the discretion to increase the statutory damages up to three times the amount. 47 U.S.C. § 227 (b) (3).

58.     Defendant Total Pharmacy is liable for the fax advertisements at issue because it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to or constituting the violation, approved the format and content of the faxes, the faxes were sent on its behalf, the faxes advertise Defendant's good, products, or services, or under general principles of vicarious liability, including actual authority, apparent authority and ratification.

59.     Defendant Lexmark is liable for the fax advertisements at issue because it created the faxes, caused the faxes to be sent, participated in the activity giving rise to or constituting the violation, approved the format and content of the faxes, the faxes advertise Defendant's goods, products, or services, the faxes were sent on its behalf, or under general principles of vicarious liability, including actual authority, apparent authority and ratification.

60.     Defendant Lexmark is liable for the fax advertisements at issue because the faxes advertise Lexmark's goods, products, or services.

61.     Defendants' actions damaged Plaintiff and the other class members. Receiving Defendants' junk faxes caused the recipients to lose paper and toner consumed in the printing of Defendants' faxes. The subject faxes used the fax machines of Plaintiff and the other class members. The subject faxes wasted Plaintiff's valuable time, requiring receipt and review Defendants' unlawful fax.

Defendants' faxes unlawfully interrupted Plaintiff and the other class members' privacy interests in being left alone. Finally, the injury and property damage sustained by Plaintiff and the other class members from the sending of unlawful fax advertisements occurred outside Defendants' premises.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, jointly and severally, as follows:

A.      That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.      That the Court award $500.00 in statutory damages for each violation of the TCPA;

C.      That, if it finds Defendants willfully or knowingly violated the TCPA's faxing prohibitions, the Court exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than 3 times the amount (Plaintiff requests trebling);

D.      That the Court enter an injunction prohibiting Defendants from violating the TCPA; and

E.      That the Court award costs and such further relief as the Court may deem just and proper.

<u>COUNT II</u>
<u>CONVERSION</u>

62.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

63.    Plaintiff brings Count II on behalf of itself and a class of similarly situated persons and against Defendants.

64.    By sending advertisements to their fax machines, Defendants improperly and unlawfully converted the class's fax machines to Defendants' own use. Where printed (as in Plaintiff's case), Defendants also improperly and unlawfully converted the class members' paper and toner to Defendants' own use. Defendants also converted Plaintiff's time to Defendants' own use, as they did with the valuable time of the other class members.

65.    Immediately prior to the sending of the unsolicited faxes, Plaintiff and the other class members each owned an unqualified and immediate right to possession of their fax machines, paper, toner, and employee time.

66.    By sending them unsolicited faxes, Defendants permanently misappropriated the class members' fax machines, toner, paper, and employee time to their own use. Such misappropriation was wrongful and without authorization.

67.    Defendants knew or should have known that its misappropriation of paper, toner, and employee time was wrongful and without authorization.

68.    Plaintiff and the other class members were deprived of the use of the fax machines, paper, toner, and employee time, which could no longer be used for any other purpose. Plaintiff and each class member thereby suffered damages as a

result of their receipt of unsolicited fax advertisements from Defendants.

69.    Defendants' unsolicited faxes effectively stole Plaintiff's employees' time because persons employed by Plaintiff were involved in receiving, routing, and reviewing Defendants' illegal faxes. Defendants knew or should have known employees' time is valuable to Plaintiff.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, jointly and severally, as follows:

A.    That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.    That the Court award damages;

C.    That the Court award punitive damages;

D.    That the Court award attorney's fees;

E.    That the Court award costs of suit; and

F.    That the Court award such further relief as it may deem just and proper under the circumstances.

Respectfully submitted,

BOBO'S DRUGS, INC. d/b/a DAVIS ISLANDS
PHARMACY, individually and as the representative
of a class of similarly-situated persons,

By:  /s/ Phillip A. Bock

Phillip A. Bock (FL 93985)
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. LaSalle St., Ste. 1000
Chicago, IL  60602
P.O. Box 416474
Miami Beach, FL 33141
Telephone:  312-658-5500
Facsimile:  312-658-5555
service@classlawyers.com