IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| BOBO'S DRUGS, INC. d/b/a DAVIS ISLANDS PHARMACY, individually and as the representatives of a class of similarly-situated persons, | )<br>)<br>)<br>)<br>) |
| Plaintiff, | ) No. 17-cv-2553 |
| v. | ) <br>) CLASS ACTION |
| TOTAL PHARMACY SUPPLY, INC. and LEXMARK INTERNATIONAL, INC., | )<br>)<br>)<br>) |
| Defendants. | ) |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND NOTICE TO THE CLASS**

Plaintiff Bobo's Drugs, Inc. d/b/a Davis Islands Pharmacy ("Plaintiff"), on behalf of itself and a proposed settlement class of similarly-situated persons (identified herein as the "Settlement Class"), respectfully requests, pursuant to Fed. R. Civ. P. 23 (e), that the Court enter an order (1) preliminarily approving the parties' proposed class action Settlement Agreement (the "Agreement") attached to Bobo's supporting brief as <u>Exhibit A</u>, (2) approving the form of Class Notice attached as Exhibit 2 to the Agreement and its dissemination to the Settlement Class, and (3) setting dates for opt-outs, objections, and a final approval hearing in August 2019.

A proposed Preliminary Approval Order is attached as Exhibit 1 to the Agreement and will be submitted to the Court electronically. This motion is unopposed.

Plaintiff has filed a brief in support of this motion.

        Respectfully submitted,

        <u>s/ Phillip A. Bock</u>
        One of Plaintiff's attorneys

Phillip A. Bock (FL# 93895)
David M. Oppenheim (*pro hac vice*)
BOCK, HATCH, LEWIS & OPPENHEIM LLC
134 N. La Salle Street, Suite 1000
Chicago, IL 60602
Telephone: 312/658-5500

Case 8:17-cv-02553-JSM-AAS   Document 67   Filed 04/05/19   Page 2 of 19 PageID 425

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| BOBO'S DRUGS, INC. d/b/a DAVIS ISLANDS PHARMACY, individually and as the representatives of a class of similarly-situated persons, | )<br>)<br>)<br>)<br>) |
| Plaintiff, | ) No. 17-cv-2553<br>) |
| v. | ) CLASS ACTION<br>) |
| TOTAL PHARMACY SUPPLY, INC. and LEXMARK INTERNATIONAL, INC., | )<br>)<br>) |
| Defendants. | ) |

BRIEF IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND NOTICE TO THE CLASS

Plaintiff, Bobo's Drugs, Inc. ("Plaintiff"), on behalf of itself and a proposed settlement class of similarly-situated persons (identified herein as the "Settlement Class"), respectfully requests that the Court preliminarily approve the parties' proposed class action settlement (Exhibit A) and, in support thereof, states as follows:

I.  **Background of the litigation.**

Plaintiff's Complaint alleges that defendants Lexmark International, Inc. ("Lexmark") and Total Pharmacy Supply, Inc. ("TPS" and together, with Lexmark, the "Defendants") sent unsolicited advertisements by facsimile to Plaintiff and others in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). The action seeks statutory damages.

Based upon the fax broadcaster's invoices produced in discovery, Plaintiff determined that Defendants' advertisements were successfully sent by facsimile a

total of 8,001 times during two mass broadcasts between October 30, 2013 and March 31, 2014 (the "Class Period"). At TPS's direction, a company named Westfax sent the faxes to pharmacies on a list TPS provided to Westfax (the "Target List"). The Target List identifies 5,427 businesses. They are the Settlement Class.

Although "blast fax" class actions might appear to be relatively simple—*i.e.,* the issue of whether a defendant sent unsolicited advertisements by fax may not seem complex—TCPA class action jurisprudence generally, and the issues in this case specifically, reveal "simple" to be an unfair characterization. Here, Plaintiff identified two challenges during discovery. First, although Plaintiff recovered the Westfax invoices and the Target List, neither Westfax nor TPS retained transmission reports identifying the recipients of the fax broadcasts. Thus, the faxes at issue were attempted to be sent to the 5,427 persons on the Target List on two occasions, during which 8,001 faxes were successful (meaning approximately 2,853 failed), but there are no records showing which fax numbers received the faxes and which did not.

Second, TPS, who instigated the fax campaign, has very few collectible assets and would be substantially judgment proof. As discussed below, its contribution to the instant settlement is $45,000. Lexmark is providing the balance of the Settlement Fund. During the litigation, Lexmark argued it is not liable for the faxing because it lacked any advance knowledge of it. Lexmark's liability turns on the facts that (1) TPS had an agreement with Lexmark permitting it to advertise using Lexmark's trademarks and (2) that the faxes promoted Lexmark's goods. Whether those factors

2

make Lexmark a liable "sender" under the TCPA and relevant regulations and case law is a question presenting real risk to both sides.

In light of the foregoing, the parties discussed potential settlement, and engaged in arm's length negotiations. The instant settlement resulted. Plaintiff and Defendants agreed to a formal term sheet of principal terms and a claim form, and then negotiated a formal, written settlement agreement under which the Defendants will make a total of $1,900,000 available to resolve the claims at issue, with all but $45,000 being funded by Lexmark. Plaintiff and Defendants also drafted and agreed to forms of proposed court orders, and a proposed notice to the class, and now they submit their Agreement to the Court. The proposed settlement is fair, reasonable, and adequate, and it avoids both risks and delay in offering money to the Settlement Class now, rather than later.

Plaintiff and Defendants have agreed to send the settlement notice by facsimile to the numbers on the TPS Target List. Some of those facsimiles will fail. Plaintiff proposes that the notice should be sent by U.S. Mail to anybody on the TPS Target List for which fax notice fails. Defendants disagree and contend that mail notice should not be sent. Because the parties could not agree on this point, they have agreed to be bound by the Court's choice on the issue, as discussed below.

## II.   Summary of the settlement.

If approved by the Court after notice to the Settlement Class, the settlement would resolve all claims about Defendants' facsimiles sent during the six-month Class

Period (October 30, 2013 and March 31, 2014). The key terms of the Agreement are as follows:

    a.    <u>Certification of a Settlement Class</u>. The Parties have stipulated to certification of a Rule 23 (b) (3) "Settlement Class" defined as, "Each person or entity that received one or more telephone facsimile messages between October 30, 2013 and March 31, 2014 offering Genuine Lexmark Reconditioned Toner Cartridges available through www.tps-online.com or 1-800-878-2822 that did not inform the fax recipient that he or she may make a request to the sender of the advertisement not to send any future facsimile advertisements and that failure to comply with the request within 30 days in unlawful." The Class excludes: (1) any person or entity that consented to receive an advertisement from Defendants by telephone facsimile; (2) any person or entity that properly requests exclusion from the class prior to the opt-out deadline; (3) Defendants, any parent, subsidiary, affiliate, or controlled person of either Defendant, as well as their attorneys, officers, directors, agents, servants, or employees, and the immediate family members of such persons; (4) the named counsel in the Action and any employee of their office or firm; and (5) the judge(s) assigned to the Action and his or her staff. Agreement, attached as <u>Exhibit A</u>, ¶ 2

    b.    <u>The Class Representative and Class Counsel</u>. The parties have agreed that Plaintiff is the Class Representative and that Plaintiff's attorney

(Florida attorney Phillip A. Bock of Bock, Hatch, Lewis & Oppenheim, LLC) is Class Counsel for the Settlement Class. *Id.*, ¶ 3.

      c.     The Settlement Fund. Lexmark has agreed to make available a total of $1,900,000 (the "Settlement Fund") to pay approved class member claims, an incentive payment to the Class Representative, attorney's fees and reasonable out of pocket expenses to Class Counsel, and the costs of administering the settlement, as approved by the Court. If class members who submit claims do not cash their checks prior to the expiration date of the checks, the money from those checks shall be refunded to Lexmark. *Id.*, ¶ 5. TPS will contribute $45,000 to the Settlement Fund through payment to Lexmark. *Id.*, ¶ 6.

      d.     Class Notice. The parties have agreed to notify the Settlement Class about the settlement by sending the notice and claim form by facsimile. In addition, Plaintiff proposes that if facsimile notice is unsuccessful after three attempts, then the notice should be sent by U.S. Mail to the names and addresses on the Target List after updating with the National Change of Address Database. Defendants oppose sending additional notice by U.S. Mail, but all parties have agreed to abide by the Court's decision on the issue of additional mail notice and agree not to appeal the Court's decision. In addition, the parties agree that the Settlement Administrator will set up a settlement website to receive electronically-submitted claims and to make available additional copies of the settlement agreement, the notice, and the Court's

5

preliminary approval order. The notice includes instructions about opting out, objecting, or submitting a claim form to the Claims Administrator by fax, mail, or through the settlement website. *Id.*, ¶ 7.

    e.    <u>Claims</u>.

        (i)    <u>Proof of Claim</u>. The class notice includes a simple, one-page Proof of Claim for submitting claims for cash payments. The Proof of Claim is the last page of Exhibit 2 to the Settlement Agreement. A class member's Proof of Claim affirms that one or more fax numbers on the Target List was/were the class member's during the Class Period. A person submitting a timely (within 75 days of notice being sent) and valid Proof of Claim will receive a cash payment of the lesser of $275 or a *pro rata* share of the Settlement Fund after the other payments required by the settlement. *Id.*, ¶ 11. A claimant need not possess any copy of the faxes at issue, need not remember receiving any fax, and need not know anything about the Defendants. Rather, a claimant must merely identify himself/herself/itself as a member of the Settlement Class by verifying ownership or use of one or more targeted fax numbers during the Class Period. *Id.* and Exhibit 2 thereto.

        (ii)    <u>Claims Administrator</u>.  Subject to the Court's approval, the parties have agreed to retain the services of a disinterested, third-party company named Class-Settlement.com to be the "Settlement Administrator." Class Counsel know Class-Settlement.com to be experienced and competent in the administration of class action settlements. The Settlement Administrator

6

will issue the class notice, maintain the settlement website, receive the claim forms, assist class members in completing and submitting forms, provide a list of accepted and rejected claims to counsel for the parties, and issue settlement checks. The Settlement Administrator's decision regarding the validity of claims, following any objection, shall be final and binding. *Id.*, ¶ 9.

  f. <u>Class Members' Right to Object to the Settlement or Request Exclusion</u>. Any member of the Class may seek to be excluded from the settlement and the Class by requesting exclusion within the time period to be set by this Court. Any member who opts out shall not be bound by any orders in this case or the terms of the Agreement and shall not be entitled to any of the monetary benefits set forth in the Agreement. *Id.*, ¶ 10.

  g. <u>Release</u>. In consideration of the relief provided by the Settlement, the Settlement Class will release all claims that were brought or could have been brought in this action about Defendants' advertisements sent by fax during the Class Period (October 30, 2013 through March 31, 2014).

  h. <u>Attorney's Fees and Expenses, and Class Representative Award</u>. At the final approval hearing, after the Class is notified about the same, Class Counsel will apply to the Court to approve an award of attorney's fees equal to 25% of the Settlement Fund ($475,000), plus reasonable out-of-pocket expenses not to exceed $15,000. Class Counsel will also ask the Court to approve an award of $15,000 from the Settlement Fund to Plaintiff, for serving as the Class Representative.

7

### III. Plaintiff respectfully requests that the Court preliminarily approve the settlement.

"Approval of a class-action settlement is a two-step process. In the first step, the Court determines whether the proposed settlement should be preliminarily approved." *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, *4 (S.D. Fla. May 14, 2007), *citing* David F. Herr, Annotated Manual for Complex Litigation § 21.632 (4th ed.2004). "At the preliminary-approval step, the Court is required to 'make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms.'" *Id., quoting* ANNOTATED MANUAL FOR COMPLEX LITIGATION § 21.632. "A proposed settlement should be preliminarily approved if it 'is within the range of possible approval or, in other words, [if] there is "probable cause" to notify the class of the proposed settlement.'" *Id.* (*quoting Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994) and *Armstrong v. Board of School Directors*, 616 F.2d 305, 312 (7th Cir.1980)). "In the second step, following appropriate notice to the class and after hearing from any potential objectors, the Court makes a final decision whether to approve the proposed settlement." *Id.*

A court may finally approve a class action settlement if the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e) (1) (C). *See Nelson v. Mead Johnson & Johnson Co.,* 484 Fed.Appx. 429, 434 (11th Cir. 2012). It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions. *See In re Checking Account Overdraft Litig.,* 830 F.Supp.2d 1330, 1341 (S.D. Fla. 2011), *quoting In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982) (the Rule 23(e) analysis should be "informed

8

by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement"); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."). "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *In re Checking Account Overdraft Litig.*, 830 F.Supp.2d at 1341, *quoting In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1105 (5th Cir. 1977).

### C. Factors to be considered in determining whether a settlement is fair, reasonable, and adequate.

The factors for consideration are: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, length and expense of further litigation; (5) opposition to the settlement; and (6) the stage of the proceedings at the time of settlement. *See Faught v. American Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011), *citing In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1315 (11th Cir. 2009).

New Federal Rule 23 (e) (2), which went into effect December 1, 2018, requires that: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any

proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Here, the settlement satisfies all of these factors.

Because the proposed settlement is within the range of possible approval, Plaintiff respectfully requests that the Court (1) order the parties to notify the Settlement Class and (2) schedule a final approval hearing to determine whether to finally approve the settlement.

The parties' Agreement resulted from arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions in this case.

The TCPA creates a right to sue to enjoin future transmissions, to recover the greater of actual monetary damages or $500 in damages for each junk fax, or to obtain an injunction plus damages. If a court finds that the sender willfully or knowingly violated the TCPA, it may increase the award up to three times the amount of damages. Here, each class member who does not opt-out of this proposed settlement and who submits a timely and valid Proof of Claim will receive a cash payment in the amount of $275 (55% of $500).

The Defendants have agreed to make a Settlement Fund available. The Settlement Fund offers a total of roughly 47.5% of the statutory damages that would be available someday in the future if Plaintiff convinced the Court to certify the class, won on the merits against Lexmark and established damages in the amount of $500

times the number of faxes shown in the fax broadcasting invoices ($4,000,500), and collected the judgment.

The settlement treats members of the class equitably relative to each other. Each class member who does not opt-out of the Settlement Class and who submits a timely and valid claim form will be mailed a check in the amount of $275. This is an excellent outcome and result, especially given the posture of the litigation. Class members can obtain a significant monetary payment while avoiding the costs and risks associated with further litigation. Without the settlement, the Class might recover substantially less, if anything at all.

It is uncertain whether the class would be certified or that liability would be established without records establishing which class members received the faxes. *See City Select Auto Sales Inc. v. BMW Bank of North America,* 867 F.3d 434 (3d Cir. 2017). At a minimum, class members would need to submit claim forms, as they are required in this settlement. And it is possible that class members would need to remember receiving the faxes in order to claim a share of a judgment. Further, TPS has no ability to pay a classwide judgment. Lexmark has significant assets but has raised the defense that it was not a liable "sender" of the faxes. *See Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.,* 771 F.3d 1274 (11th Cir. 2014); *Siding and Insulation Co. v. Alco Vending, Inc.*, 822 F.3d 886 (6th Cir. 2016).

Because there are no records identifying precisely who received the faxes, it is questionable whether Defendants would ultimately be compelled to pay a sum of $500 times the number of faxes at issue. Indeed, had the case proceeded through litigation,

11

the class certified, and judgment entered, the Third Circuit suggested that an affidavit of receipt of one of those defendants' faxes could be required before a class member receives payment after success on the merits. *City Select*, 867 F.3d at 441-42. Under the settlement, class members can claim a share of the Settlement Fund merely by confirming that they are one of the potential targets of the faxes (i.e. one or more of their fax numbers was listed in the Target List during the Class Period), without having to remember—or declare—receiving one in 2013 or 2014.

Plaintiff's attorneys are very experienced in TCPA and class action matters and they believe this settlement is fair, reasonable, and adequate to the Class.[1] They

---

[1] Plaintiff's attorneys have litigated TCPA class actions since 2003. Courts have appointed them as lead class counsel in many TCPA cases, in addition to other types of class actions. *See, e.g., City Select Auto Sales, Inc. v. David Randall Assocs., Inc., et al*, 296 F.R.D. 299 (D. N.J. 2013), *pet. for leave to appeal denied*, 14-8001 (3rd Cir. Mar. 20, 2014); *A & L Industries, Inc. v. P. Cippollini, Inc.*, Civ. Action No. 12-07598, 2013 WL 5503303 (D. N.J. Oct. 2, 2013), *reconsideration denied,* 2013 WL 6145766 (D. N.J. Nov. 21, 2013), *pet. for leave to appeal denied,* 13-8094 (3rd Cir. Mar. 20, 2014); *Hawk Valley, Inc. v. Taylor*, 301 F.R.D. 169 (E.D. Pa. 2014), *pet. for leave to appeal denied*, 14-8039 (3rd Cir. May 8, 2014); *Bridging Communities Inc. v. Top Flite Financial Inc.*, 843 F.3d 1159 (6th Cir. 2016); *American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 757 F.3d 540 (6th Cir. 2014); *Compressor Engineering Corp. v. Charles J. Thomas-Chicken Shack,* No. 10-cv-10059 (E.D. Mich. 2015); *Sparkle Hill, Inc. v. Interstate Mat Corp.*, Case No. 11-10271, 2012 WL 6589258 (D. Mass. Dec. 18, 2012); *Imhoff Inv., L.L.C. v. Sammichaels, Inc.*, Case No. 10-10996, 2012 WL 4815090 (E.D. Mich. Oct. 1, 2012), *appeal denied*, 2013 WL 1760353 (6th Cir. Apr. 25, 2013); *Siding & Insulation Co. v. Combined Ins. Grp., Ltd., Inc.*, Case No. 11 CV 1062, 2012 WL 1425093 (N.D. Ohio Apr. 24, 2012); *Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, Case No. 11-cv-1074, 2012 WL 262556 (N.D. Ohio Jan. 30, 2012); *Jackson's Five Star Catering, Inc. v. Beason*, Case No. 10-10010 (E.D. Mich. Apr. 20, 2011); *Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*, No. 10-10620, 2010 WL 5439737 (E.D. Mich. Dec. 27, 2010); *CE Design, Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009), *app. denied* (7th Cir. Sept. 9, 2009); *Hinman v. M and M Rental Center, Inc.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008), *app. denied* (08-8012) (7th Cir. Jun 13, 2008); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 CV 5953, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009); *G.M. Sign, Inc. v.*

negotiated the settlement only after significant discovery, and after considering the legal and factual issues in the case, the risks and expenses involved in pursuing the lawsuit to conclusion, and the likelihood, costs, and possible outcomes of one or more procedural and substantive appeals. Plaintiff's counsel have negotiated many TCPA class settlements. Based upon the foregoing, and the judgment of experienced class counsel, Plaintiff respectfully requests that the Court preliminarily approve the settlement.

### IV. Plaintiff respectfully requests that the Court approve notice to the Settlement Class.

Under federal law, notice of the settlement must satisfy due process. *Maher v. Zapata Corp.*, 714 F. 2d 436, 450-453 (5th Cir. 1983); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F. 2d 956, 963 (3d Cir. 1983). The Court is vested with wide discretion both as to the manner in which notice is given and the form that notice is to take. 7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2005).

Rule 23 (e) (i) (B) requires that notice of a settlement be provided "in a reasonable manner." Here, the parties have agreed to direct notice to the known or suspected class members and will deliver the simple, one-page claim form with the

---

*Group C. Communications, Inc.*, 08 CV 4521, 2010 WL 744262 (N.D. Ill. Feb. 25, 2010); *Green v. Serv. Master On Location Servs. Corp.*, No. 07 C 4705, 2009 WL 1810769 (N.D. Ill. June 22, 2009); *Paldo Sign v. Topsail*, No. 08 C 5959, 2010 WL 4931001 (N.D. Ill. Nov. 29, 2010); *Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 WL 2224892 (N.D. Ill. May 27, 2008); *Targin Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd.*, 679 F. Supp. 2d 894 (N.D. Ill. 2010). *See also City Select Auto Sales, Inc. v. BMW Bank of North America, Inc.*, 867 F.3d 434 (3d Cir. 2017) (reversing denial of certification). Additionally, Plaintiff's counsel have successfully negotiated numerous class-wide settlements in TCPA cases.

notice, so that members of the Settlement Class can easily complete a claim form and return it by fax, mail, or through the settlement website as they choose.

The parties propose to issue notice to the Settlement Class by facsimile. In addition, Plaintiff proposes that notice be sent by U.S. Mail to Settlement Class Members to whom facsimile notice fails. A copy of the proposed notice is attached as Exhibit 2 to the Agreement. The Target List contains names and addresses, and the Settlement Administrator is equipped to perform reverse lookup and verify the information in the Target List against the national Change of Address Database. Defendants would not face any extra cost for the mailings, as settlement administration is part of Class Counsel's expenses, which are capped at $15,000. Lexmark has indicated in prior discussions that Class Members unreachable by facsimile in 2019 are less likely to have received the faxes in 2013-14, but that is not necessarily the case, and in any event, the settlement does not differentiate between class members who did receive the faxes and those who did not since there are no records showing this. Therefore, Plaintiff respectfully submits that the notice should be mailed to any suspected class member for whom the fax notice fails.

The contents of the notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner

for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23 (c) (3)." Here, the notice satisfies these requirements.

The notice meets the legal standards for appropriate notice and satisfies Rule 23 (e). Therefore, Plaintiff respectfully requests that the Court approve the proposed notice and authorize its dissemination to the Class by facsimile with a supplemental mailing for any of the failed fax notices.

## V. The Court should schedule a final fairness hearing.

Plaintiff requests that the Court schedule a hearing at which any opponents of the settlement could voice their opinions or objections. The class notice will inform the Settlement Class about this hearing. Exhibit A, Ex. 2. At the fairness hearing, Plaintiff will request that the Court enter the parties' agreed Final Approval of Agreement and Judgment, which is attached as Exhibit 3 to the Agreement.

## VI. Conclusion.

WHEREFORE, Plaintiff respectfully requests that the Court enter a Preliminary Approval Order in the form attached as Exhibit 1 to the Agreement, granting preliminary approval of the proposed settlement, directing that the members of the Settlement Class be notified about the proposed settlement in the form and manner agreed by the parties (Exhibit 2 to the Agreement), deciding whether the parties should send notice by mail to the names and addresses of potential class members who do not receive the notice by facsimile—and setting dates for opt-outs, objections, and a final approval hearing. The final approval hearing

15

should be on a date no sooner than 120 days after preliminary approval and the parties suggest a date in August 2019 would be appropriate.

              Respectfully submitted,

              <u>s/ Phillip A. Bock</u>
              One of Plaintiff's attorneys

Phillip A. Bock (FL# 93895)
David M. Oppenheim (*pro hac vice*)
BOCK, HATCH, LEWIS & OPPENHEIM, LLC
134 N. La Salle Street, Suite 1000
Chicago, IL 60602
Telephone: 312/658-5500

16

CERTIFICATE OF E-FILING AND SERVICE

  I hereby certify that on April 5, 2019, I electronically filed the foregoing *Plaintiff's Unopposed Motion and Brief Requesting Preliminary Approval* using the ECF System, which will send notification of such filing to all counsel of record.

                       s/ Phillip A. Bock